**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHEILA CASTILLERO and BAMBI YOUNG, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>     v.<br><br>XTEND HEALTHCARE, LLC and STAFF MANAGEMENT SOLUTIONS, LLC,<br><br>        Defendants. | Civil Action No. 22-02099 (GC) (DEA)<br><br>**OPINION** |

**CASTNER, U.S.D.J.**

This matter involves federal and state statutory claims brought by two named plaintiffs who worked at a virtual call center set up during the COVID-19 pandemic to assist New Jersey residents. Plaintiffs allege that they, and many others, were not provided with proper notice before being discharged as part of mass layoffs at the call center. Plaintiff Sheila Castillero, a New Jersey resident, asserts claims against Defendants Xtend Healthcare, LLC ("Xtend"), and Staff Management Solutions, LLC ("SMS"). Plaintiff Bambi Young, a Florida resident, asserts claims solely against Xtend.

Xtend moves to dismiss both Castillero's and Young's claims pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(2) and 12(b)(6) or to compel Castillero's claims to individual arbitration. (ECF No. 19.) SMS moves to dismiss Castillero's claims pursuant to Rule 12(b)(6) or to compel her claims to individual arbitration. (ECF No. 18.) Following oral argument and careful consideration of the written submissions, the Court is prepared to rule on the motions.

For the reasons set forth below, the motions are **DENIED** in part and **GRANTED** in part. Specifically, Xtend's motion to dismiss Young's claims for lack of personal jurisdiction pursuant to Rule 12(b)(2) is **GRANTED**.  In contrast, the Court finds that it has personal jurisdiction over both Xtend and SMS as to Castillero's claims, and Defendants' motions to dismiss Castillero's claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted are **DENIED** without prejudice pending limited discovery and a ruling on whether her claims should be compelled to individual arbitration.

## I.    BACKGROUND

### A.  PROCEDURAL BACKGROUND

On April 11, 2022, Plaintiffs Young and Castillero filed their original Complaint.  (ECF No. 1.[1])  Before Defendants responded, Plaintiffs filed their Amended Complaint on June 29, 2022 (the operative "Complaint").  (ECF No. 8.)

Plaintiffs bring suit on behalf of themselves and similarly situated former employees of Xtend and SMS, alleging that Xtend and SMS violated the federal Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101, *et seq.*, and the New Jersey Millville Dallas Airmotive Plant Job Loss Notification Act (the "New Jersey WARN Act"), as amended, N.J. Stat. Ann. § 34:21-1, *et seq.*, when Young and Castillero were discharged as part of mass layoffs without advance notice.[2]  (ECF No. 8 ¶¶ 74-96.)  Young asserts claims solely against Xtend on behalf of a subclass of those discharged on or about February 24, 2022.  (*Id.* ¶ 61.)  Castillero asserts claims against both Xtend and SMS on behalf of a subclass of those discharged on or about April 7, 2022.  (*Id.* ¶ 60.)

---

[1]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[2]    The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

On September 7, 2022, Defendants filed motions to dismiss and/or compel arbitration. (ECF Nos. 18 & 19.)  Xtend asks the Court to dismiss both Young's and Castillero's claims pursuant to Rules 12(b)(2) or 12(b)(6) or, in the alternative, to compel Castillero's claims to individual arbitration.  (ECF No. 19.)  SMS asks the Court to dismiss Castillero's claims pursuant to Rule 12(b)(6) or, in the alternative, to compel Castillero's claims to individual arbitration.[3] (ECF No. 18.)  On October 14, 2022, Plaintiffs opposed, and on November 4, 2022, Defendants replied.  (ECF Nos. 25-28.)

While the motions were pending, the Court entered an Order directing Castillero to inform the Court whether she would request limited discovery on the issue of arbitrability if the Court decided the motions to compel under the summary judgment standard.  (ECF No. 30.)  On June 22, 2023, Castillero replied that she would want "to avail herself of targeted discovery" if it were available.  (ECF No. 31.)  On July 6, 2023, SMS wrote that it also wanted to engage in limited discovery on the issue of arbitrability if discovery were granted.  (ECF No. 32.)  Oral argument was held on October 3, 2023.  (ECF No. 42.)

### B. FACTUAL BACKGROUND[4]

Xtend is a Tennessee-based limited liability corporation headquartered in Hendersonville, Tennessee.  (ECF No. 8 ¶¶ 24-25.)  It is a subsidiary of Navient Corporation, a Fortune 500 company specializing in contact center solutions for federal, state, and local governments.  (*Id.* ¶

---

[3]    Young pleads no allegations against SMS, and at oral argument, counsel for Young indicated that she did not individually assert her claims against SMS.  The Court, therefore, finds that Young's individual claims are directed solely against Xtend, not SMS.  *See, e.g.*, *Chong v. City of Hoboken*, Civ. No. 21-15825, 2022 WL 3357899, at *3 n.6 (D.N.J. Aug. 15, 2022) ("Plaintiff pleads no allegations against the . . . Defendants . . . .  To the extent Plaintiff brought Counts Five and Six against the . . . Defendants, Plaintiff's claims are therefore dismissed.").

[4]    The following facts are drawn from the Complaint and accepted as true for the purpose of deciding the pending motions.

26; ECF No. 20.)  SMS is an Illinois-based limited liability corporation headquartered in Chicago, Illinois.  (ECF No. 8 ¶ 28.)  It is a subsidiary of Trueblue, Inc., a company traded on the New York Stock Exchange.  (*Id.* ¶ 29.)

In December 2020, Xtend successfully answered a request for proposals from the State of New Jersey that sought a vendor to operate the State's COVID-19 vaccination call center.  (*Id.* ¶ 31.)  The purpose of the call center was to help schedule vaccination appointments and to answer questions that members of the public had about the registration systems.  (*Id.* ¶ 38.)  The center was staffed with up to 1,300 agents who worked remotely and used their personal cell phones, computers, and internet connections to perform their job duties.  (*Id.* ¶¶ 32-35, 63.)

There were two groups of employees at the call center.  The first, of which Young was a member, was hired, managed, and compensated by Xtend.  (*Id.* ¶ 3.)  The second, of which Castillero was a member, was managed by Xtend but hired and compensated by SMS (as Xtend's subcontractor).  (*Id.* ¶ 4.)  SMS onboarded the agents it retained for the call center, including orientation and training.  (*Id.* ¶ 40.)

Young, a resident of Florida, was hired by Xtend as a supervisor, starting on April 5, 2021.  (*Id.* ¶¶ 17-18.)  She was promoted to help desk supervisor.  (*Id.*)  At all times, Young was managed and paid by Xtend.  (*Id.* ¶¶ 6, 17.)  On February 24, 2022, Young was notified orally by Xtend that she was discharged without cause, effective immediately.  (*Id.* ¶¶ 6, 20, 23.)  Young did not receive written notice that she was being let go.  (*Id.* ¶ 22.)  Young was part of a reduction in force that resulted in the discharge of about 900 employees.  (*Id.* ¶¶ 52-53.)

Castillero, a resident of New Jersey, was hired by SMS as a bilingual customer service representative, starting on March 15, 2021.  (*Id.* ¶ 11.)  Although Castillero was hired, paid, and notified of her discharge by SMS, her day-to-day work was managed by Xtend.  (*Id.* ¶¶ 5, 12-13, 48-49.)  Xtend also controlled the decision to discharge Castillero.  (*Id.* ¶ 14.)  On April 5, 2022,

4

Castillero was notified via email by SMS that she was discharged without cause, effective April 7.  (*Id.* ¶¶ 15-16.)  Castillero was part of a layoff of approximately 400 employees ordered by Xtend and carried out by SMS.  (*Id.* ¶ 54.)

## II.     LEGAL STANDARD[5]

### A.  PERSONAL JURISDICTION—RULE 12(B)(2)

Rule 12(b)(2) permits a defendant to move to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).  When a statute does not provide for nationwide service of process, federal courts in New Jersey exercise personal jurisdiction to the extent permitted by New Jersey law.  *See Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010) ("[A] federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state.").

"New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution."  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (first citing N.J. Court Rule 4:4-4(c); and then citing *Charles Gendler & Co. v. Telecom Equip. Corp.*, 102 N.J. 460, 469 (1986)).  Therefore, the key inquiry on a motion to dismiss for lack of personal jurisdiction is whether, under the Due Process Clause, "the defendant has certain minimum contacts with . . . [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).

A district court can assert either general (*i.e.*, "all-purpose") or specific (*i.e.*, "case-linked") jurisdiction over a defendant that has minimum contacts with the forum.  *See Bristol-Myers Squibb*

---

[5]     Because the Court does not reach the motions to dismiss for failure to state a claim, the Rule 12(b)(6) standard is not recited.

*Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the [forum] State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 384 (3d Cir. 2022) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For specific jurisdiction, there are two primary elements that must be met. "First, there must be purposeful availment: minimum contacts with the forum state that show the defendant took a deliberate act reaching out to do business in that state. Second, the contacts must give rise to—or relate to—plaintiff's claims." *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021) (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024-25 (2021)). If these elements are met, the exercise of jurisdiction must "otherwise comport[] with fair play and substantial justice." *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

In proposed class actions, courts typically analyze whether there is either general or specific jurisdiction as to the claims of each named plaintiff.[6] *See Fischer*, 42 F.4th at 375 ("[W]e analyze the jurisdictional questions with respect to the class as a whole, *as exemplified by the named plaintiff*." (emphasis added)); *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447-48 (7th Cir. 2020) (explaining that, in the class-action context, "the named representatives must be able to demonstrate either general or specific personal jurisdiction"); *see also Shoemaker v. Zeitlin*, Civ. No. 21-1668, 2023 WL 3826460, at *6 (M.D. Pa. June 5, 2023) ("Specific jurisdiction usually is assessed on a claim-by-claim basis. . . . This is true even when, like here, plaintiffs bring a putative class action because . . . a named plaintiff cannot accomplish as a representative of a class what

---

[6]     At oral argument, the parties concurred that personal jurisdiction had to be evaluated as to the claims of each named plaintiff, not the putative class.

they cannot achieve on their own." (citations omitted)).[7]

## B. Motion to Compel Arbitration—FAA

The Federal Arbitration Act ("FAA") "establishes a strong federal policy in favor of compelling arbitration over litigation." *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 396 (3d Cir. 2020) (quoting *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000)). Under the FAA, "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," a district court must "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. If the making of the arbitration agreement is at issue and cannot be decided as a matter of law, "the court shall proceed summarily to the trial thereof." *Id.*

When deciding a motion to compel arbitration, a district court must first determine whether to apply a motion to dismiss or summary judgment standard. *See Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) ("Answering that question [of what standard applies] is of utmost importance because the two standards differ in significant ways.").

In *Guidotti*, the United States Court of Appeals for the Third Circuit set forth the test that should be applied when determining the standard of review:

---

[7]     *See also Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 216 (D.N.J. 2020) ("In a class action, 'it is the named plaintiff's claim that must arise out of or result from the defendant's forum-related activities, not the claims of the unnamed members of the proposed class, who are not party to the litigation absent class certification.'" (quoting *Aliano v. Quaker Oats Co.*, 2017 WL 56638, at *4 (N.D. Ill. Jan. 4, 2017))); *Chernus v. Logitech, Inc.*, Civ. No. 17-673, 2018 WL 1981481, at *3 (D.N.J. Apr. 27, 2018) ("[I]n the context of a class action," personal jurisdiction "must be satisfied for *each and every named plaintiff* for the suit to go forward." (quoting *Abrams Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1107 n.5 (C.D. Cal. 2001))); *Horowitz v. AT&T Inc.*, Civ. No. 17-4827, 2018 WL 1942525, at *15-16 (D.N.J. Apr. 25, 2018), *opinion clarified on denial of reconsideration*, 2019 WL 77306 (D.N.J. Jan. 2, 2019) (in putative class action under federal law for age discrimination, distinguishing the claims of the two named non-resident plaintiffs from the claims of the three New Jersey resident plaintiffs and dismissing the non-resident plaintiffs for lack of specific jurisdiction).

> [W]hen it is apparent, based on "the face of a complaint, and documents relied upon in the complaint," that certain of a party's claims "are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay."  But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question."  After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.
>
> [716 F.3d at 776 (internal citations omitted).]

The ultimate aim of the procedure is to "ensur[e] that arbitration is awarded only if there is 'an express unequivocal agreement to that effect.'"  *Id.* at 775 (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)); *accord Sapp v. Indus. Action Servs., LLC*, 75 F.4th 205, 208 (3d Cir. 2023) ("Arbitration is an ever-growing trend that many parties prefer and courts routinely enforce.  Yet that trend cannot continue so far that arbitration is forced on parties who never agreed to it.").

## III.   DISCUSSION

The Court will address, in turn, the dispositive motions against each Plaintiff, Young and then Castillero.

### A.  PLAINTIFF YOUNG

Defendant Xtend moves to dismiss Plaintiff Young's federal and New Jersey WARN Act claims for lack of personal jurisdiction pursuant to Rule 12(b)(2) and for failure to state a claim pursuant to Rule 12(b)(6).  (*See* ECF No. 19.)  Before the Court reaches the arguments as to why Young may or may not have plausible claims, the Court must first determine if it has personal jurisdiction over Xtend as to Young's claims.  *See Murphy v. Eisai, Inc.*, 503 F. Supp. 3d 207, 214

(D.N.J. 2020) ("If . . . personal jurisdiction is absent, the court is powerless to address the merits of the Rule 12(b)(6) motion.").

When defendants raise a Rule 12(b)(2) challenge, plaintiffs "bear[] the burden of establishing personal jurisdiction." *O'Connor*, 496 F.3d at 316 (citing *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)).  If factual allegations are disputed, "the plaintiff[s] must sustain [their] burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Miller Yacht Sales*, 384 F.3d at 101 n.6 (quoting *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 603-04 (3d Cir. 1990)).  However, if the district court does "not hold an evidentiary hearing . . . , the plaintiff[s] need only establish a *prima facie* case of personal jurisdiction and the plaintiff[s] [are] entitled to have [their] allegations taken as true and all factual disputes drawn in [their] favor." *O'Connor*, 496 F.3d at 316 (quoting *Miller Yacht Sales*, 384 F.3d at 97); *see also Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 113 n.5 (3d Cir. 2020) ("[I]n reviewing a motion to dismiss under Rule 12(b)(2), we 'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'"  (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992))).

### i.  GENERAL JURISDICTION

Young does not contend that this Court has general jurisdiction over Xtend in New Jersey, and the Court finds that it does not.

To establish general jurisdiction, Xtend's "affiliations with [New Jersey] [must be] so 'continuous and systematic' as to render [Xtend] essentially at home in the . . . State." *Goodyear*, 564 U.S. at 919 (quoting *International Shoe*, 326 U.S. at 317).  "For a corporate defendant, the main bases for general jurisdiction are (1) the place of incorporation [or formation]; and (2) the principal place of business." *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 173 (D.N.J. 2016) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 136 (2014)); *see also Canal Ins. Co. v. Fema*

*Trucking, LLC*, Civ. No. 20-17953, 2022 WL 3227188, at *4 (D.N.J. Aug. 10, 2022) ("[G]eneral jurisdiction over a limited liability company only tends to exist in its state of citizenship."); *Hannah v. Johnson & Johnson Inc.*, Civ. No. 18-10319, 2020 WL 3497010, at *17 (D.N.J. June 29, 2020) ("As PTI Royston is a LLC, the Court looks to both its place of [formation] and its principal place of business for the purpose of determining if general jurisdiction exists.").

"[G]eneral jurisdiction may [also] arise in the 'exceptional case' where 'a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State.'" *Display Works*, 182 F. Supp. 3d at 173 (citation omitted); *see also Daimler AG*, 571 U.S. at 139 n.19 ("[A] corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State."). Such an exceptional case requires a plaintiff to furnish at least some evidence that reasonably suggests that a corporate entity's contacts with the forum state are so substantial that they surpass the entity's contacts with other states. *See, e.g.*, *Ontel Prod. Corp. v. Mindscope Prod.*, 220 F. Supp. 3d 555, 560 (D.N.J. 2016) ("[Plaintiff] does not provide any evidence that reasonably suggests that indirect sales in New Jersey occur at all or that those sales surpass [Defendant's] third party sales made elsewhere.").

Here, there is no allegation that Xtend, a Tennessee-based limited liability corporation, was organized or formed in New Jersey. Rather, Young alleges that Xtend's headquarters and principal place of business are in Tennessee. (ECF No. 8 ¶¶ 24-25.) Young has also not produced evidence that would enable this Court to conclude that Xtend's business activities in New Jersey are so substantial that they give rise to the exceptional case of general jurisdiction. Young merely alleges

that Xtend "conducted business in New Jersey."  (*Id.* ¶ 30.)  This is insufficient for the Court to

find that general jurisdiction over Xtend in New Jersey is appropriate.[8]

### ii.  SPECIFIC JURISDICTION

Xtend purposefully availed itself of the New Jersey forum by contracting to operate a

virtual call center that serves the State.  (*See* ECF No. 25-1.)  Therefore, whether the Court has

specific jurisdiction over Xtend as to Young's New Jersey and federal WARN Act claims centers

on the second step in the specific-jurisdiction analysis: do Young's claims "arise out of or relate

to" Xtend's contacts with New Jersey?  *See Ford*, 141 S. Ct. at 1025 ("The plaintiff's claims, we

have often stated, 'must arise out of or relate to the defendant's contacts' with the forum." (quoting

*Bristol-Myers*, 582 U.S. at 262)).

Xtend argues that "Young's . . . claims lack any legally significant nexus to" New Jersey.

(ECF No. 19-1 at 22.)  It underscores that Young is a resident of Florida, she does not allege that

she performed any work for Xtend while physically in New Jersey, and she "does not allege

personal interaction with New Jersey or its citizens."  (*Id.*)  Xtend also underscores that Young's

"only point of connection . . . is her allegation that Xtend . . . contracted to provide out-of-state

---

[8]    Plaintiffs also allege that Xtend has a registered agent address in New Jersey (ECF No. 8
¶ 25), but they do not argue that this subjects Xtend to personal jurisdiction in New Jersey.  Even
if argued, however, both state and federal courts have held that New Jersey's registered agent
statutes, unlike Pennsylvania's, do not explicitly require a corporation to consent to personal
jurisdiction in the State.  *Compare Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028, 2037 (2023)
(providing for general jurisdiction over foreign corporation based on its registration to do business
with Pennsylvania where "Pennsylvania law is explicit that 'qualification as a foreign corporation'
shall permit state courts to 'exercise general personal jurisdiction' over a registered foreign
corporation, just as they can over domestic corporations."  (quoting 42 Pa. Cons. Stat. §
5301(a)(2)(i))), *with Basse v. Bank of Am., N.A.*, Civ. No. 22-03674, 2023 WL 2696627, at *7
(D.N.J. Mar. 29, 2023) ("Unlike 42 Pa. Cons. Stat. Ann. § 5301, neither N.J. Stat. Ann. § 14A:4-
1, N.J. Stat. Ann. § 14A:13-3, nor N.J. Ct. R. § 4:4-4 *et seq.* explicitly provide that registering to
conduct business in New Jersey constitutes express consent to general or specific jurisdiction.");
*Kim v. Korean Air Lines Co.*, 513 F. Supp. 3d 462, 469 (D.N.J. 2021) (same); *Dutch Run-Mays
Draft, LLC v. Wolf Block, LLP*, 164 A.3d 435, 444 (N.J. Super. Ct. App. Div. 2017) (same).

call center services to New Jersey residents during COVID-19," and "Young does not claim to be (and is not) a party to the Xtend-New Jersey contract."  (*Id.*)

In rebuttal, Young submits a copy of the contract between Xtend and the State of New Jersey (ECF No. 25-1), which (according to Young) required Xtend to be in "near-constant communication with State officials."  The contract also includes reference to New Jersey's employment laws and indicates that all litigation stemming from it would be filed in New Jersey state court.  (ECF No. 26 at 10-13.)  Young asserts that the contract should be viewed as consent to jurisdiction in New Jersey and, in the alternative, maintains that her "WARN claims arose during [her] work for Xtend's New Jersey COVID-19 Vaccination Call Center" and "from the curtailment of [her] employment when conducting those activities."  (*Id.* at 23-24.)

Considering what has been presented as well as the parties' competing arguments, the Court concludes that the weight of precedent supports the finding that this Court does not have specific jurisdiction over Xtend as to Young's federal and New Jersey WARN Act claims. Young's claims are not sufficiently related to Xtend's contacts with New Jersey.

In *Bristol-Myers Squibb v. Superior Court of California*, a mass tort action for product liability related to a pharmaceutical drug, the United States Supreme Court considered whether the California state court had specific jurisdiction over plaintiffs' claims against a large pharmaceutical company that was neither incorporated nor headquartered in California.  582 U.S. at 258.  The Supreme Court's decision turned, as it does in this case, on whether the specific claims arose from the company's contacts with California.  The more than 600 plaintiffs in *Bristol-Myers* were primarily non-California residents who asserted "a variety of state-law claims based on injuries allegedly caused by a . . . drug" sold by the pharmaceutical company.  *Id.*  The Supreme Court held that the non-California residents—who were not prescribed the drug in California, did not purchase the drug in California, and were not injured in California—could not maintain a claim

in California even if the pharmaceutical company had sold the drug to California residents who were injured in California and even if the pharmaceutical company had contracted with a California distributor. *Id.* at 264-65, 268-69.

The Court emphasized that "the nonresidents' claims involve[d] no harm in California and no harm to California residents" and, therefore, the alleged connections were too weak to support the exercise of specific jurisdiction. *Id.* at 266; *see also id.* at 265 ("What is needed—and what is missing here—is a connection between the forum and the specific claims at issue."). It wrote that "[i]n order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or occurrence that takes place in the forum State.'" *Id.* at 264 (quoting *Goodyear*, 564 U.S. at 919). And "[w]here there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."[9] *Id.*

---

[9]       There has been some dispute nationwide as to whether, and when, the principles enunciated in *Bristol-Myers* apply to class action suits in federal court, including those that involve federal question jurisdiction. The view in this Circuit is that the application of *Bristol-Myers* is limited to a jurisdictional analysis of the individual claims of the *named* plaintiffs in the putative class action. *See, e.g., Fischer*, 42 F.4th at 387 (discussing that in class actions the jurisdictional inquiry is typically limited to named plaintiffs and holding that, "like the out-of-state plaintiffs in *Bristol-Myers*, the opt-in plaintiffs in FLSA collective actions must satisfy the personal jurisdiction requirements of the Fourteenth Amendment to join the suit"); *Ponzio*, 447 F. Supp. 3d at 216 ("The Court agrees, therefore, that the principles announced in *BMS* are applicable to the present action." (collecting cases)); *Gress v. Freedom Mortg. Corp.*, 386 F. Supp. 3d 455, 464 (M.D. Pa. 2019) ("[A]lthough most, if not all, [courts] appear to agree that [*Bristol-Myers*] should apply equally to federal courts." (collecting cases)); *Horowitz*, 2018 WL 1942525, at *15 ("[W]hile *Bristol-Myers* addressed state law claims, courts have found that nothing in *Bristol-Myers* suggests that it does not apply to named plaintiffs in a federal putative class action."); *Chernus*, 2018 WL 1981481, at *7 ("[S]ince the Supreme Court rendered its decision in *Bristol-Myers,* district courts are in disagreement as to whether, in a class action context, courts must have personal jurisdiction over the claims of the nonresident, unnamed class members. . . . [M]ore importantly, these cases universally held that in a putative class action . . . courts are only concerned with the jurisdictional obligations of the named plaintiffs . . . ." (collecting cases)).

13

More recently, in *Fischer v. Federal Express*, the Third Circuit Court of Appeals found that the out-of-state plaintiffs in a wage-and-hour action under the Fair Labor Standards Act ("FLSA") could not establish specific jurisdiction in Pennsylvania over an out-of-state corporation. 42 F.4th at 387-88.  In putative class actions, wrote the Court, questions of personal jurisdiction are "analyze[d] . . . with reference to the named plaintiff only."  *Id.* at 373.  And the Court underscored that the out-of-state plaintiffs did "not contend they had any connection to, let alone injury arising from, FedEx's activities in Pennsylvania.  Their claims entirely relate to their treatment by FedEx in their respective home states."  *Id.* at 383.

In comparison to *Bristol-Myers* and *Fischer*, the Supreme Court in *Ford Motor Company v. Montana Eighth Judicial District Court* held that Ford's contacts with Minnesota and Montana (advertising, selling, and servicing the allegedly defective model of vehicle in those states) were sufficiently related to the product liability claims stemming from two car accidents when the victims were residents of the respective states where the suits were filed and had been physically injured by accidents that took place in those states. 141 S. Ct. at 1022.  The Court found a "strong relationship" between the company, the forums, and the litigation because "Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege[d] malfunctioned and injured them in those States."  *Id.* at 1028.  The Court also noted that "[t]hose States have significant interests at stake—'providing [their] residents with a convenient forum for redressing injuries inflicted by out-of-state actors.'"  *Id.* at 1030 (quoting *Burger King*, 471 U.S. at 473).

The above opinions are instructive here.  Young (a Florida resident) alleges that while she was working for Xtend (a Tennessee corporation) from her home in Florida, Xtend discharged her in Florida as part of a reduction in force without providing her the requisite 60-day notice.  (ECF No. 8 ¶¶ 17-18, 20-23.)  Xtend's alleged actions in Young's individual case "involve[d] no harm

in [New Jersey] and no harm to [New Jersey] residents," *Bristol-Meyers*, 582 U.S. at 266, and

Young's "claims entirely relate to [her] treatment by [Xtend] in [her] respective home state[]" of

Florida, *Fischer*, 42 F.4th at 383, and Young does not allege to have even stepped foot in New

Jersey during her employment with Xtend or to have been supervised by anyone based in New

Jersey. *See Ford*, 141 S. Ct. at 1031-32 (suggesting that "the place of a plaintiff's injury and

residence . . . may be relevant in assessing the link between the defendant's forum contacts and

the plaintiff's suit").

Young places great weight on the contract between Xtend and the State of New Jersey,

wherein Xtend agreed that "any and all litigation arising [from the contract] or related thereto"

would be governed by the laws of New Jersey "and shall be filed" in New Jersey Superior Court,

not federal court.  (ECF No. 25-1 at 83; ECF No. 26 at 13.)  Though the contract clearly

demonstrates that Xtend directed activities towards New Jersey, details New Jersey's expectations

for how Xtend would operate its call center (including with regard to hiring), and would surely

entitle the State of New Jersey to sue Xtend within the state for any breach, it does not establish

specific jurisdiction in New Jersey as to Young's own WARN Act claims.  The district court's

opinion in *Ojeda v. Louis Berger Group* is instructive on this issue.  *See* Civ. No. 18-17233, 2021

WL 941875 (D.N.J. Mar. 11, 2021).

*Ojeda* involved a dispute over alleged unpaid overtime under the FLSA.  After Hurricanes

Irma and Maria devastated Puerto Rico and the Virgin Islands, FEMA awarded multiple contracts

to a New Jersey corporation for power generation and repair.  *Id.* at *1.  The New Jersey

corporation then subcontracted with other corporations (none of which were based in New Jersey)

that retained the plaintiffs (residents of Puerto Rico) as independent contractors.  *Id.*  Bringing suit

against the subcontractors in New Jersey federal court, the plaintiffs argued that the subcontractors

had substantial connections to New Jersey through the subcontracts they had entered into with the

New Jersey corporation. *Id.* at *9. The plaintiffs further alleged that their wage-and-hour claims arose from those New Jersey connections and, thus, specific jurisdiction could be maintained over the subcontractors. *Id.* at *8-9. The district court disagreed.

The court acknowledged that the out-of-state subcontractors had "surely directed activities towards New Jersey vis-à-vis [the subcontracts with the New Jersey corporation]," but it found that the wage-and-hour litigation brought by the plaintiffs, residents of Puerto Rico, against the subcontractors "d[id] not 'arise out of or relate to' those contacts with" New Jersey. *Id.* at *11; *see also id.* ("Where a business's contacts with a state are not sufficiently [related] to the claims at issue, they are irrelevant to specific jurisdiction . . . ."). Citing the Supreme Court's opinion in *Bristol-Myers*, the district court found that "it is not enough that a defendant's contacts with a forum relate to the same general subject matter as the claim." *Id.* There must be "a tighter connection between the elements of the claim and the connections to the forum state." *Id.* (citing *O'Connor*, 496 F. 3d at 323). Notably, the court found "that a contract with a party in the forum is not sufficient to confer jurisdiction, even if the contract is a but-for precondition of the ultimate controversy. That is especially true where the cause of action is not one between the parties to that contract, for breach of that contract." *Id.* at *13 (collecting cases).

Similarly, in *Murphy v. Eisai*, the district court found that the plaintiff failed to establish that the New Jersey-based federal court had specific jurisdiction over a non-New Jersey corporation when the plaintiff (who alleged disability accommodation discrimination) had worked for the corporation in the United Kingdom, the request for an accommodation had been made in the United Kingdom, and the plaintiff was discharged in the United Kingdom. 503 F. Supp. 3d at 222. In so holding, the court rejected as insufficient the plaintiff's allegations that he had been managed by an employee in New Jersey and "that [Plaintiff's] job as a statistician related to clinical

tests that occurred, in part, in New Jersey, and other facts of that nature." *Id.* The court found that such contacts "d[id] not relate directly to [Plaintiff's] claim" of discrimination. *Id.*

Both *Ojeda* and *Murphy* demonstrate that the contacts between Xtend and New Jersey that Young focuses on in this case do not sufficiently relate to her WARN Act claims. Young's claims are not based on Xtend's contract with New Jersey or any specific contacts between Xtend and the State. The key facts related to Young's claims would be the same if Xtend had entered into a contract with any other state or contracted with multiple other states at the same time. *See Lloyd v. Retail Equation, Inc.*, Civ. No. 21-17057, 2022 WL 18024208, at *5 (D.N.J. Dec. 29, 2022) ("Although there can be no dispute that the purported contract would be a 'but for' cause in the sense that if it had never been formed TRE would not have performed services to BB & B, courts require a 'tighter connection between the elements of the claim and the connections to the forum state.'" (citation omitted)). Instead, Young's claims arise out of Xtend's (a Tennessee corporation) decision to hire Young (a Florida resident) to work for Xtend remotely in Florida and then to discharge her in Florida without proper notice.

Because the alleged wrongful conduct directly related to Young's claims is alleged to have taken place in either Florida (Young's place of residence, employment, and discharge) or Tennessee (Xtend's principal place of business) and the injury Young suffered was in Florida, not New Jersey, the alleged connection between her claims and New Jersey is not strong enough for this Court to exercise specific jurisdiction over Xtend as to Young's claims. *See Hepp*, 14 F.4th at 208 (holding connection "too weak" for specific jurisdiction between the plaintiff's misappropriation claim and the defendants' in-forum contacts when the plaintiff did not specifically allege that the merchandise featuring her photo had been sold in the forum or that the photo in question was taken, uploaded, or hosted in the forum); *see also D'Ambly v. Exoo*, Civ. No. 20-12880, 2021 WL 5083816, at *6 (D.N.J. Nov. 1, 2021) ("[N]one of the Plaintiffs live or

work in New Jersey.  Because the alleged wrongful conduct here involves interference with their home life and employment, these Plaintiffs do not establish that the Court has specific personal jurisdiction.").

Finally, although unrequested, the Court is unconvinced that jurisdictional discovery would uncover evidence that would alter the conclusion that Young's claims are not sufficiently related to Xtend's contacts with New Jersey.  The relevant facts are largely undisputed, and the Court sees no reason to grant discovery when the disagreement between the parties is legal, not factual, in nature.  *See Murphy*, 503 F. Supp. 3d at 225 ("The facts and allegations do not rise to the level where [the Court], within [its] discretion, would permit further exploration through jurisdictional discovery.").  Accordingly, the Court finds that it lacks personal jurisdiction over Defendant Xtend as to Plaintiff Young's federal and New Jersey WARN Act claims.  Young's claims are dismissed without prejudice.[10]

### B.  PLAINTIFF CASTILLERO

Both SMS and Xtend move to dismiss and/or compel arbitration of Plaintiff Castillero's federal and New Jersey WARN Act claims.  (*See* ECF Nos. 18 & 19.)  Xtend submits that Castillero's claims should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction or under 12(b)(6) for failure to state a claim.  (ECF No. 19-1 at 18-28, 40-50.)  SMS does not contest personal jurisdiction, but it submits that Castillero's claims against it should also be dismissed under Rule 12(b)(6) for failure to state a claim.  (ECF No. 18-4 at 13-24.)  Both Defendants contend that Castillero's claims are subject to individual arbitration as a result of the "At-Will Employment Dispute and Resolution Agreement" that Castillero allegedly signed as a condition of her employment.  (ECF No. 18-4 at 24-27; ECF No. 18-6 at 4-5; ECF No. 19-1 at 28-40.)

---

[10]    Young is not left without recourse.  She could sue Xtend in Tennessee based on general jurisdiction and possibly in her home state of Florida.  *See Bristol-Meyers*, 582 U.S. at 268-69.

### *i.* SEQUENCING OF MOTIONS

The first question that the Court must answer before proceeding to the substance of Xtend's and SMS's motions is the order in which the issues raised should be decided. Based on precedent from the United States Court of Appeals for the Third Circuit, the Court finds that jurisdictional questions should ordinarily be resolved before motions to compel arbitration but that motions to compel should be resolved before motions to dismiss for failure to state a claim.[11]

In *Edmondson v. Lilliston Ford*, a three-judge panel of the Third Circuit ruled in a *per curiam* opinion that the district court had erred in denying as premature a motion to compel arbitration pending a decision on a motion to dismiss for failure to state a claim. 593 F. App'x 108 (3d Cir. 2014). Before deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court wrote, a district court "must first determine the scope of arbitrable issues, if any, and then determine in the first instance what portion of the claims and defenses are properly before the arbitrator." *Id.* at 112. This guidance was reiterated three years later by another panel of the Third Circuit in *Silfee v. Automatic Data Processing, Inc.*, 696 F. App'x 576 (3d Cir. 2017). Writing for the panel in *Silfee*, Judge Hardiman found that the district court had "erroneously ruled on [the defendant's] motion to dismiss before resolving its motion to compel arbitration," emphasizing that "[a]rbitrability is a 'gateway' issue, so 'a court should address the arbitrability of the plaintiff's claim *at the outset* of the litigation." *Id.* at 577-78 (emphasis in original) (quoting *Reyna v. Int'l Bank of Com.*, 839 F.3d 373, 377 (5th Cir. 2016)).

Although these two non-precedential opinions from the Third Circuit contain strong language in support of deciding motions to compel arbitration before motions to dismiss for failure

---

[11]    The parties did not brief the issue of sequencing but indicated at oral argument their approval of the Court's approach.

to state a claim,[12] the *Edmondson* panel emphasized that this approach does not apply to motions

to dismiss for lack of subject matter jurisdiction.  To the contrary, the panel suggested that a district

court should "mak[e] a threshold determination of subject matter jurisdiction *prior* to proceeding

with an analysis of the motion to compel . . . because the FAA does not independently confer

federal subject matter jurisdiction."  *Edmondson*, 593 F. App'x at 112 (emphasis added).  Once a

district court "determines it has subject matter jurisdiction," wrote the panel, "it should then

proceed with a determination on the motion to compel arbitration."  *Id.* at 113.

Recent precedent from the Third Circuit Court of Appeals also supports deciding motions

to dismiss for lack of personal jurisdiction before motions to compel arbitration.  Notably, in

*Reading Health System v. Bear Stearns & Co.*, a customer of J.P. Morgan's broker-dealer arm filed

a statement of claim with the Financial Industry Regulatory Authority ("FINRA") that alleged that

J.P. Morgan had engaged in unlawful conduct in connection with certain offerings and asking that

the claims be resolved through FINRA arbitration.  900 F.3d 87, 90 (3d Cir. 2018).  The customer

then filed a declaratory judgment action in federal court in Pennsylvania to compel J.P. Morgan to

arbitrate their dispute pursuant to FINRA Rule 12200, which requires FINRA members to arbitrate

any dispute with a customer.  *Id.* at 90-92.  In response, J.P. Morgan moved to transfer the action

to New York based on a forum-selection clause in its broker dealer agreements.  *Id.* at 92.  Faced

with the dueling applications, the district court decided the motion to transfer before addressing

---

[12]     *See also Manopla v. United Collection Bureau, Inc.*, Civ. No. 19-16777, 2020 WL 6938354, at *3 (D.N.J. Nov. 24, 2020) ("The courts will therefore order limited discovery on whether Defendant may enforce the Arbitration Provision, and will defer ruling on all other issues raised by Defendant's Motion, such as whether Plaintiff's Complaint should be dismissed for failure to state a claim."); *Rose v. Equitrans Midstream Corp.*, Civ. No. 19-01343, 2020 WL 13547735, at *2 (W.D. Pa. May 22, 2020) ("When courts are faced with both a motion to dismiss for failure to state a claim and a motion to compel arbitration, it is required that the court first address the motion to compel arbitration."); *Nelson v. Brown*, Civ. No. 17-3232, 2019 WL 368597, at *5 (E.D. Pa. Jan. 28, 2019) ("[W]e cannot consider the merits of Plaintiff's claims in making a determination as to whether those claims must be arbitrated.").

the customer's application to compel arbitration.  *Id.* at 92.

On appeal, the parties in *Reading* disputed whether the motion to transfer should have been decided first.  The Third Circuit Court of Appeals ultimately sided with the district court and "agree[d] that threshold disputes over venue and jurisdiction should be resolved before merits disputes," concluding "that the District Court's sequence of decision-making was not only permissible, but also preferable."  *Id.* at 95.  The Court recognized that "federal courts have flexibility to choose among alternate 'grounds for denying audience to a case on the merits,'" but it held that, unlike threshold issues that are jurisdictional in nature, "resolving a dispute over arbitrability requires a district court to apply its law-declaring power regarding the parties' right to arbitrate.  This determination may be frustrated if the threshold issue[s] of venue [and jurisdiction] [are] not decided first."  *Id.* (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 423 (2007)).  The Court explained that this sequencing "promotes finality interests and judicial economy by ensuring the facial validity of any subsequent order compelling (or denying) arbitration."  *Id.* at 95-96.

The holding in *Reading* that "threshold disputes over venue and jurisdiction" should be decided before motions to compel arbitration seemingly stems from this Circuit's view that arbitration is a merits-based issue and not a jurisdictional one.  *See, e.g., Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 328 (3d Cir. 2022) ("Sections 3 and 4 of the FAA are not jurisdictional limitations."); *see also Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 597 (3d Cir. 2004) ("Our prior decisions support the traditional practice of treating a motion to compel arbitration as a motion to dismiss for failure to state a claim upon which relief can be granted.").  Because jurisdictional issues are typically addressed before merits-based issues, *see Consol Energy Inc. v. Berkshire Hathaway, Inc.*, 252 F. App'x 481, 483 (3d Cir. 2007) ("We agree that courts are generally required to determine questions of jurisdiction before reaching the merits of a case."),

the Third Circuit's apparent preference, if not requirement, would be for its district courts to resolve motions to dismiss for lack of subject matter jurisdiction and personal jurisdiction (among other threshold jurisdictional questions) *before* reaching motions to compel arbitration.[13] Accordingly, this Court will decide Xtend's motion to dismiss Plaintiff Castillero's claims for lack of personal jurisdiction before reaching Xtend's and SMS's motions to compel individual arbitration of Castillero's claims.

### ii. PERSONAL JURISDICTION OVER XTEND

As previously explained, there is no general jurisdiction over Xtend in New Jersey. Nevertheless, unlike for Plaintiff Young, the Court finds that it has specific jurisdiction over Xtend as to Plaintiff Castillero's federal and New Jersey WARN Act claims.

Castillero (a New Jersey resident) was hired by SMS to work from her home in New Jersey as a bilingual customer service representative for Xtend's COVID-19 virtual call center that served residents in the State of New Jersey. (ECF No. 8 ¶¶ 10-12.) Castillero was terminated by SMS via email, but Castillero alleges that her day-to-day work in New Jersey was managed by Xtend from its headquarters in Tennessee and that Xtend controlled and directed the decision to discharge her in New Jersey. (*Id.* ¶¶ 12-15, 40-45, 48-49, 54-57.)

---

[13]     This approach has been largely followed by district courts in this Circuit. *See, e.g.*, *Lacon v. Educ. Principle Found.*, Civ. No. 21-03957, 2022 WL 2240074, at *3 (E.D. Pa. June 22, 2022) (holding that because the court did not have personal jurisdiction over defendant, it could not rule on motion to compel arbitration); *Shift4 Payments, LLC v. Smith*, Civ. No. 19-00330, 2019 WL 3229201, at *3 (E.D. Pa. July 17, 2019) ("Before determining whether arbitration should be compelled, the Court first considers whether it has personal jurisdiction over [Defendant]." (citing *Control Screening LLC v. Tech. Application & Prod. Co. (Tecapro), HCMC-Vietnam*, 687 F.3d 163, 171 (3d Cir. 2012))); *Premier Hosp. Grp.-New Stanton II v. Patel*, Civ. No. 17-00645, 2017 WL 3492570, at *2 n.3 (W.D. Pa. Aug. 15, 2017) (distinguishing *Silfee* and rejecting argument that court was required to decide motion to compel arbitration before dismissal on grounds of personal jurisdiction).

Arguing that such contacts are insufficient, Xtend asks the Court to construe Castillero's allegations to find that Castillero did not work for them and, instead, was employed by SMS. (ECF No. 19-1 at 25.) However, as noted, Castillero plead that her day-to-day work was controlled by Xtend and that she was, in fact, an employee of Xtend's virtual call center subject to supervision and management by Xtend, even if SMS was responsible for the human resource functions.[14] (ECF No. 8 ¶¶ 10-15, 40-45, 48-49, 54-57.) Castillero also submits a copy of the contract between Xtend and New Jersey that strongly supports the inference that Xtend oversaw the virtual call center and its employees who worked in different states. (ECF No. 25-1 at 6-7.) Xtend has submitted no affidavit or documentary evidence that rebuts Castillero's allegations, and SMS (Xtend's co-defendant) has claimed in its own briefing that "*Plaintiff Castillero worked for Xtend* as part of the temporary staffing provided by SMS." (ECF No. 18-4 at 8 (emphasis added).)

Xtend's next argument is that, even if Castillero worked for Xtend, "a remote worker's location does not establish her employer's 'purposeful availment.'" (*Id.* at 25-26.) Although it is true that there is case law that finds that a remote worker based in New Jersey does not automatically confer personal jurisdiction over the out-of-state employer, those cases are readily distinguishable from the present circumstances. In *Crosson v. TMF Health Quality Institute*, for example, there were no specific allegations that the Texas employer "conducted any business in New Jersey or targeted New Jersey in any purposeful way beyond permitting Plaintiff to work remotely as a matter of his own convenience." Civ. No. 20-18800, 2023 WL 2609048, at *5 (D.N.J. Mar. 23, 2023). Similarly, in *Magill v. Elysian Global Corporation*, "Plaintiff's physical location in New Jersey [wa]s the only factor that connect[ed] th[e] dispute to New Jersey" and "[a]ll of Plaintiff's work . . . was performed . . . with world-wide scope." Civ. No. 20-06742, 2021

---

[14]    At oral argument, Xtend agreed that it would be premature at this stage to engage in an alter ego analysis, which would require a fact-specific inquiry.

WL 1221064, at *7 (D.N.J. Apr. 1, 2021).

In contrast to the employers in *Crosson* and *Magill*, Xtend purposefully availed itself of New Jersey beyond simply having Castillero as one of its remote workers.  And unlike Plaintiff Young, Castillero's claims arise out of Xtend's contacts with New Jersey because Castillero is a *New Jersey resident* who *worked in New Jersey* for Xtend's virtual call center and was then *fired in New Jersey* at Xtend's direction, allegedly without the proper notice.  Here, Xtend's allegedly unlawful actions "involve[d] . . . harm in [New Jersey] and . . . to [a New Jersey] resident[]," *Bristol-Meyers*, 582 U.S. at 266, and Castillero's "claims entirely relate to [her] treatment by [Xtend] in [her] respective home state[]" of New Jersey, *Fischer*, 42 F.4th at 383.  *See also Ford*, 141 S. Ct. at 1031 ("[T]he plaintiffs are residents of the forum States.  They used the allegedly defective products in the forum States.  And they suffered injuries when those products malfunctioned in the forum States.  In sum, each of the plaintiffs brought suit in the most natural State . . . .").

This conclusion is buttressed by case law that emphasizes that "New Jersey has a strong interest in protecting its residents" in employment-related actions and that "[t]his need for protection is all the more true for New Jersey citizens working remotely for out-of-state employers."  *Chadwick v. St. James Smokehouse, Inc.*, Civ. No. 14-2708, 2015 WL 1399121, at *6 (D.N.J. Mar. 26, 2015) (collecting cases); *see also Fogg v. Clean Harbors Env't Servs., Inc.*, Civ. No. 21-7626, 2023 WL 1794836, at *5 (D.N.J. Feb. 7, 2023) (underscoring that in FLSA actions "in-state employment is a good proxy for specific jurisdiction").

Accordingly, the Court finds that it has specific jurisdiction over Xtend as to Plaintiff Castillero's federal and New Jersey WARN Act claims.

### iii.   STANDARD OF REVIEW OF ARBITRABILITY AND LIMITED DISCOVERY

Having found that the Court has personal jurisdiction over Xtend as to Castillero's WARN Act claims, the Court must now decide what standard of review to apply to Defendants' motions to compel those claims to individual arbitration.

In *Guidotti*, the Third Circuit Court of Appeals directed that, "when it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'" 716 F.3d at 776 (quoting *Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). In the alternative, "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then 'the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question.'" *Id.* After this "limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." *Id.*

In the present case, it is not apparent on the face of the Complaint (which has no accompanying documents) that Castillero entered into an arbitration agreement, and the Complaint makes no reference to her having entered into any written agreement with either SMS or Xtend. (*See* ECF No. 8.) Thus, under a plain reading of *Guidotti*, the motions to compel arbitration should be analyzed under the summary judgment standard, and the parties are entitled to limited discovery on arbitrability before the motions are decided. *See Guidotti*, 716 F.3d at 776 ("[I]f the complaint and its supporting documents are unclear regarding the agreement to arbitrate, . . . then 'the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing . . . .'" (quoting *Somerset*, 832 F. Supp. 2d at 482)).

Some district courts in the Third Circuit have taken the position that, so long as the non-movant does not respond to a motion to compel arbitration "with additional *facts* sufficient to place the arbitration provision in issue," motions to compel should be decided under the Rule 12(b)(6) standard, even when it is not apparent on the face of a complaint that a plaintiff's claims are subject to arbitration. *See Checchia v. SoLo Funds*, Civ. No. 23-444, 2023 WL 3868369, at *5 (E.D. Pa. June 7, 2023) (emphasis in original) (collecting cases). If the Court were to adopt the same approach here, the Court might very well decide the pending motions to compel arbitration under the Rule 12(b)(6) standard. Castillero's opposition does not factually contest the arbitration provisions; instead, she advances a primarily legal argument: the arbitration agreement at issue, which provides for individual arbitration of Castillero's claims, is void because "Castillero's statutory right to bring a WARN representative action is not waivable" as a result of the United States Congress granting plaintiffs the right to proceed on a representative basis. (*See* ECF No. 25 at 25-33.)

Such an approach, however, appears inconsistent with the Third Circuit's clear instruction in *Guidotti* that a motion to compel arbitration must be decided under the summary judgment standard "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate." *Guidotti*, 716 F.3d at 776. The Court has been unable to identify an opinion where the Third Circuit has sanctioned a differing approach. *See, e.g.*, *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 234 n.1 (3d Cir. 2020) ("Because Defendants moved to compel arbitration based on the face of the complaint and the documents relied upon, and because the District Court did not order discovery and instead relied only on the pleadings, we draw the facts from Plaintiffs' complaint."); *In re Rotavirus Vaccines Antitrust Litig.*, 789 F. App'x 934, 938 (3d Cir. 2019) ("Because arbitrability is not apparent on the face of the Complaint, limited discovery on the issue of arbitrability is appropriate, after which [defendant] may file a renewed motion to compel

arbitration.").

Indeed, in *Roman v. Prince Telecom, LLC*, the Third Circuit panel denied the request that it "hold that, even when the complaint does not reference the arbitration agreement, a motion to compel arbitration should be decided on a Rule 12(b)(6) standard" if the motion is supported by "a sworn declaration and an authenticated copy of the arbitration agreement" and "plaintiff's response does not include both an unequivocal denial and evidence sufficient to place the agreement in issue." 2023 WL 3194464, at *3 n.7 (3d Cir. May 2, 2023). The panel wrote that the "decision in *Guidotti* is clear and conflicts with that position, and we are not at liberty to reconsider our precedent, nor would we even if we could. *Guidotti* remains persuasive." *Id.*

The conclusion of the Third Circuit panel in *Roman* applies equally here.[15] Unless and until the Court of Appeals instructs otherwise, this Court must apply *Guidotti* as written. *See Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 330 (3d Cir. 2022) ("It was . . . the District Court's view that adhering to *Guidotti* was a waste of time. That was error . . . ."); *Buvel v. Bristol Myers Squibb Co.*, Civ. No. 22-6449, 2023 WL 4074198, at *2 (D.N.J. June 20, 2023) ("Here, the Complaint makes no reference to an arbitration agreement *at all*, nor does it attach an exhibit that references one. Given that the question of arbitrability cannot be resolved without considering evidence extraneous to the pleadings, it would be inappropriate to apply a Rule 12(b)(6) standard in deciding the instant motion. As the Third Circuit instructed in *Guidotti*, in this type of scenario, 'the motion to compel arbitration *must* be denied pending further development of the factual record.'" (quoting *Guidotti*, 716 F.3d at 774)).

---

[15]   This Court is duty-bound to follow the approach set forth by the Court of Appeals. *See Camden Cnty. Hist. Soc'y v. Dep't of Transportation*, 371 F. Supp. 3d 187, 190 n.6 (D.N.J. 2019) (Bumb, C.J.) ("Binding precedent for all is set only by the Supreme Court, and for the district courts within a circuit, only by the court of appeals for that circuit." (quoting *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1176 (D.C. Cir. 1987) (Ginsburg, J.), *aff'd sub nom.*, *Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122 (1989))).

Accordingly, the Court finds that Xtend's and SMS's motions to compel arbitration must be decided under the summary judgment standard because it is not apparent on the face of the Complaint and accompanying documents that Castillero's claims are subject to an enforceable arbitration agreement. Recognizing, however, that Castillero's arguments in opposition to arbitration have so far been primarily legal, not factual, the Court entered an Order asking Castillero if she wanted the Court to proceed to rule on the pending motions to compel under the summary judgment standard without providing an opportunity for limited discovery. (*See* ECF No. 30.) Castillero declined that invitation, expressing a preference that she be allowed discovery in accordance with *Guidotti* prior to the Court ruling on the motions, and raising factual concerns related to the arbitration provision in dispute. (ECF No. 31.) Defendant SMS also asked for an opportunity to engage in this discovery. (ECF No. 32.) The parties reiterated the request at oral argument. As a result, the Court will grant the parties a limited period in which to engage in discovery related to the issue of arbitrability. After this limited discovery, Defendants may renew their motions to compel. *See Guidotti*, 716 F.3d at 776 ("After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.").

## IV.   **CONCLUSION**

For the reasons set forth above, Defendant Xtend's motion to dismiss Plaintiff Young's claims for lack of personal jurisdiction (ECF No. 19) is **GRANTED**, and Young is dismissed from this case. The Court finds that it has personal jurisdiction over Defendants Xtend and SMS as to Plaintiff Castillero's claims, and Defendants' motions to dismiss (ECF Nos. 18 & 19) Castillero's claims pursuant to Rule 12(b)(6) for failure to state a claim are **DENIED** without prejudice pending limited discovery and a ruling on whether the claims should be compelled to individual arbitration. An appropriate Order follows.

Dated:  November 28, 2023

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE